IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHANE L. COOPER                                                                                      PLAINTIFF

v.                                         CASE NO.         11-2139

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                          DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his applications for SSI on October 13, 2009 , alleging an onset date of October 9, 2008 (T. 119), due to plaintiff's Bi-polar disorder and anxiety (T. 123).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on April 15, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 29 years of age and possessed a 10th grade education.  The Plaintiff  had no  past relevant work ("PRW").

-1-

On September 7, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's bipolar disorder and/or panic disorder with agoraphobia and polysubstance abuse did not meet or equal any Appendix 1 listing.  T. 14.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand/walk for six hours and that he could perform work where interpersonal contact is incidental to the work performed and where the complexity of tasks is learned and performed by rote with few variable and little judgment and where supervision is simple, direct and concrete. T. 16.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupations such as poultry eviscerator, machine tender and assembler.  T. 21.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

The burden of proof is on the claimant through the first four steps of the sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Although the burden of

production shifts to the Commissioner at step five, the ultimate burden of persuasion rests with the claimant. *See Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004); *Cruze v. Chater,* 85 F.3d 1320, 1322 (8th Cir. 1996).

### III.  Discussion:

The ALJ first determined that the Plaintiff had severe impairments of hypertension, bipolar disorder and/or panic disorder with agoraphobia and poly-substance abuse but that none of these impairments met or medically equaled one of the listed impairments in the regulations. (T. 14).  This finding is not challenged by the Plaintiff.

The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand/walk for six hours and that he could perform work where interpersonal contact is incidental to the work performed and where the complexity of tasks is learned and performed by rote with few variable and little judgment and where supervision is simple, direct and concrete. T. 16.

The Plaintiff contends that the ALJ failed to include all of the relevant limitations in the RFC by way of the mental limitations and side effects of medication. (ECF No. 11, p. 14).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    **1. Relevant Time Period**

SSI benefits cannot be recovered retroactively. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir.1989)(noting that although the claimant asserted she was disabled before filing her application for SSI, the relevant period began with the date of her SSI application because SSI benefits are not payable for a period prior to the application); 20 C.F.R. § 416.335. Thus, the time period at issue is from September 17, 2009, through September 7, 2010, the date of the ALJ's decision.

    **2. Credibility**

The ALJ found that the Plaintiff's statements were "considered only minimally credible

due to inconsistencies in the file and his poly substance abuse. (T. 19).

### a. Failure to seek treatment.

The Plaintiff filed for disability on October 13, 2009 and alleged that he was Bi-Polar and had anxiety. (T. 123). He evidently self-diagnosed his Bi-Polar condition by his own research (T. 148) but no treating physician or psychologist had given such a diagnosis and the Plaintiff sought no treatment for any mental disorder, except for seeing Dr. Hong, shortly before filing for disability. (T. 221).

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id.*; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

### b. Unemployment Benefits.

The ALJ noted that the Plaintiff had obtained unemployment benefits in the 4th quarter of 2009 and 1st quarter of 2009. (T. 19, 106). The acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability. *See Cox v. Apfel* 160 F.3d 1203, 1208 (C.A.8 (Mo.),1998) *citing Salts v. Sullivan*, 958 F.2d 840, 846 n. 8 (8th Cir.1992). However, the negative impact cannot be uniformly or automatically applied in every case. Where, as here, there is no other evidence to detract from the claimant's credibility, the negative inference is not sufficient, of itself, to negate the claimant's credibility. *See id.,see also Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir.1991).

### c. Activities of Daily Living.

The ALJ noted that Plaintiff was able to perform personal care, prepare meals, watch television, fish with friends, going out partying, do household chores, do some yard work, attend church, shop, and drive a car to take his wife to work and his children to school (Tr. 15, 131-37, 299, 329). These substantial daily activities are not consistent with Plaintiff's allegations of total disability. *See e.g., Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8thCir. 2001) (noting that the claimant was able to clean house, make the bed, do dishes with help, prepare meals, visit friends, occasionally shop, read, and run errands).

In the Function Report completed by the Plaintiff on November 3, 2009 the Plaintiff stated that he would rather be alone and that being around a lot of people brings on a panic attack and that he got anxiety attacks when he went to shop (T. 152). On March 5, 2010 it is reflected in the nurse's notes that the Plaintiff stated that his wife was "mad at him for going out and partying all nite" (T. 299). The ability to go out and "party all night" is inconsistent with someone who has debilitating anxiety.

### d. Substance Abuse

In the Plaintiff's interview with Dr. Kralik in October 2009 he denied drinking but admitted to being arrested for Public Intoxication two times. He also admitted to marijuana use but stated that was in his 20s and that he had not used in five years. (T. 223). When the Plaintiff saw his treating medical provider in December 2009 he denied any substance abuse (T. 256). When the Plaintiff was admitted to the Northwest Medical Center on March 4, 2010 he reported "having been addicted to methamphetamines but states he quit 4 years ago". The blood test however showed positive for amphetamines and when he was confronted with this evidence he "admitted to smoking by 'taking a few hits a couple days ago'". The Plaintiff's blood test also

showed positive for THC which he reported "smoking about once a week". Blood work was also positive for opiates. (T. 273). On March 5, 2010 it is reflected in the nurse's notes that the Plaintiff stated that his wife was "mad at him for going out and partying all nite" (T. 299) and the Plaintiff was informed that if he did not comply with the substance abuse policy at WAC&GC he would not be allowed to continue treatment at the clinic. (T. 369).

The court finds that the ALJ correctly discounted the Plaintiff's subjective complaints.

### 3.  RFC Determination

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001).  Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. *Id.* Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. *See Pate-Fires*, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

The Plaintiff saw N. Van Hoang, M.D., who prescribed Diazepam [1] for Plaintiff in February and July 2009 when he complained of anxiousness, nervousness, and panic attacks because he had just lost his job and was being evicted  (T. 217).  He refilled his prescription in July 2009 (T. 216) and informed the Plaintiff about the Good Samaritan Clinic for future treatment. The court notes that the normal dosage of Diazepam for Anxiety is 2-10 mg 2 to 4 times per day. (See www.drugs.com).  Dr. Hoang dosage appears to be only 10 grams 2 times per day. In October 2009 the Plaintiff was see by Dr. Kralik for a Mental Diagnostic Evaluation and he informed her that he was not taking any medication.  (T. 221).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693.

While the Plaintiff made some claim that he could not afford proper medical treatment (T. 130) for his mental condition there is no evidence that he sought treatment at the Good Samaritan Clinic or that he was ever refused treatment for his condition.  *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal

---

[1] Diazepam is in a group of drugs called benzodiazepines (ben-zoe-dye-AZE-eh-peens). Diazepam affects chemicals in the brain that may become unbalanced and cause anxiety. Diazepam is used to treat anxiety disorders, alcohol withdrawal symptoms, or muscle spasms.

quotations omitted);  *Cole v. Astrue*  2009 WL 3158209, 6 (W.D.Ark.) (W.D.Ark.,2009).

Dr. Kralik, a consultive psychologist who saw the Plaintiff on October 26, 2009 diagnosed him with Adjustment Disorder and a GAF of 45-55[2]. (T. 226).  Dr. Jerry Henderson, a consultive psychologist, provided a Psychiatric Review Technique on November 9, 2009 found the Plaintiff to be Moderately impaired in Maintaining Social Functioning and Concentration, Persistence, and Pace; Mildly impaired in Activities of Daily Living; and no episodes of Decompensation. (T. 243).  Dr. Henderson also prepared a Mental Residual Function Capacity Assessment which did not find the Plaintiff Markedly Limited in any area. (T. 249).

The Plaintiff was seen by Sonja Greiner, APN at CMHC on December 4, 2009 who diagnosed him with Major Depressive Disorder, Social Phobia and Intermittent Explosive Disorder. She assessed his current GAF at 55-60 (T. 256). She started him on Symbyax [3] 6/25 mg, Vistaril [4] 25 mg and Zyprexa 5mg.  She also scheduled him to begin "IDT" class and meetings with a therapist for individual therapy. (T. 257).

A GAF (global assessment of functioning) score is not determinative for Social Security purposes. The Social Security Administration has explained that, "[t]he GAF scale, which is

---

[2] A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000). A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

[3] Symbyax contains a combination of fluoxetine and olanzapine. Fluoxetine is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Olanzapine is an antipsychotic medication. These drugs affect chemicals in the brain.

Symbyax is used to treat depression caused by bipolar disorder (manic depression). Symbyax is also used to treat depression after at least 2 other medications have been tried without successful treatment of symptoms.

[4] Vistaril is used as a sedative to treat anxiety and tension. It is also used together with other medications given for anesthesia.

described in the DSM-III-R (and the DSM-IV), is the scale used in the multi axial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-765 (Aug. 21, 2000), *cited in Jones v. Astrue*, No. 09-3263, — F.3d —, 2010 WL 3396835, * 13 n.4 (8th Cir. Aug. 31, 2010) (Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings); *see also Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score not essential to the RFC's accuracy).

    APN Greiner saw the Plaintiff again on December 18, 2009 and noted that he did not attend his "IDT" session and had missed two sessions with his therapist. (T. 258). He was diagnosed with Panic Disorder with Agoraphobia and the Vistaril and Symbyax were discontinued.  On January 4, 2010 LAC Loretta Gedosh with WAC&G center noted that the Plaintiff's medication appear to be helping with his anxiety (T. 362) but on January 5, 2010 she noted that the Plaintiff was not taking his medication as prescribed (T. 365).  The ALJ noted that the Plaintiff was non complaint with his treatment (T. 19).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001).

In January 2010, Loretta Gedosh, Plaintiff's counselor, documented that Plaintiff reported that he was "doing much better" and that "the nurse practitioner has prescribed a 'good combination of medication' for him" (Tr. 18, 362).  Ms. Greiner noted that Plaintiff reported that his medications were effective and that Klonopin was significantly effective in controlling his

panic symptoms (Tr. 18, 365). Later in January 2010, Ms. Gedosh performed a diagnostic evaluation of Plaintiff (Tr. 18, 358-61). Ms. Gedosh diagnosed panic disorder with agoraphobia and recommended outpatient treatment with medication management, individual and family therapy, and attendance at "IDT" groups twice a week (Tr. 18, 361). In February 2010, Plaintiff reported that he had a reduction in panic attacks and that his mood was improving (Tr. 18, 367). Ms. Greiner increased the dose of medication for depression and added a sleep aid (Tr. 18, 367). On March 9, 2010 the Plaintiff represented to APN Sonja Greiner that his medication was only moderately effective (T. 369) but the court notes that this was after he admitted to marijuana and methamphetamine use.

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

The above evidence is consistent with the mental limitations included in the RFC, such that the ALJ found that Plaintiff was able to perform work where interpersonal contact is incidental to the work performed; where the complexity of tasks is learned and performed by rote with few variables and little judgment involved; and supervision is simple, direct, and concrete (Tr. 16).

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 6th day of August 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE